## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BRIAN WILSON, *on behalf of*   :   CIVIL ACTION
*himself and all others*   :
*similarly situated,*   :   NO. 13-cv-01122-NLH-AMD
    PLAINTIFF,   :
      :
   v.   :   CLASS ACTION
      :   JURY TRIAL DEMANDED
ANHEUSER-BUSCH COMPANIES, LLC, :
    DEFENDANT.   :   Motion Date: June 3, 2013

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

DAVID S. SENOFF, ESQUIRE
LAUREN C. FANTINI, ESQUIRE
**CAROSELLI BEACHLER MCTIERNAN & CONBOY**

1845 WALNUT STREET, FIFTEENTH FL.
PHILADELPHIA, PENNSYLVANIA 19102
T: (215) 609-1350
F: (215) 609-1351
DSENOFF@CBMCLAW.COM
LFANTINI@CBMCLAW.COM

ATTORNEYS FOR PLAINTIFF
BRIAN WILSON AND THE
PROPOSED CLASS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.     INTRODUCTION ...................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND................................3

    A.   The Federal Regulatory Framework and New Jersey's Adoption Thereof................................................................3

    B.   The Intent and Permitted Use of Tolerances as Stated by the TTB and NIST ................................................................5

III.   STANDARD OF REVIEW........................................................9

IV.   ARGUMENT  ......................................................................11

    A.   Plaintiff Has Standing to Sue................................................11

        1.  Plaintiff has standing to sue for claims for all products ...........12

        2.  Plaintiff has standing to sue as he has suffered an injury in fact................................................................15

            a.  Benefit-of-the-Bargain.......................................16

            b.  Out-of-Pocket Loss ...........................................18

    B.   Tolerance Regulations Do Not Provide a Safe Harbor for Deliberately Unfair, Unlawful, Misleading or Fraudulent Conduct ................................................................19

    C.   AB's Exclusive Jurisdiction Claim Defies Law and Common Sense ................................................................21

    D.   Preemption is Inapplicable to the Instant Case ...............................23

E.    The Primary Jurisdiction Doctrine is Inapplicable to the Present Dispute ............................................................................26

F.    The ABC Act Does Not Divest This Court of Subject Matter Jurisdiction ......................................................................29

G.    Plaintiff States a Valid Claim Under the Consumer Fraud Act ......32

    1.  Plaintiff has sufficiently pled "unlawful conduct" of Defendant AB ..............................................................33

    2.  Plaintiff has sufficiently pled "an ascertainable loss" under the CFA .......................................................................35

    3.  Plaintiff has sufficiently pled the element of causation .............35

H.    Plaintiff Has Sufficiently Pled Breach of Implied Warranty of Merchantability Claim ...................................................36

I.    Plaintiff Has Sufficiently Pled a Claim for Violation of the MMWA ............................................................................39

V.    CONCLUSION ......................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

Amchem Prods. v. Windsor,
   521 U.S. 91 (1997) ................................................................... 14

Arcand v. Brother Itern. Corp.,
   2010 U.S. Dist. LEXIS 103942 (D.N.J. 2010).......................................... 35

Arrow Distilleries v. Alexander,
   109 F.2d 397 (7th Cir. 1940)..................................................... 22

Baby Neal for and by Kanter v. Casey,
   43 F.3d 48 (3d Cir. 1994)........................................................ 12

Bell Atlantic v. Twombly,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007) ......................... 10

Campione v. Adamar of N.J.,
   714 A.2d 299 (N.J. 1998).......................................................... 29

Clark v. Prudential Ins. Co. of America.,
   2013 U.S. Dist. LEXIS 15571 (D.N.J. 2013)........................................ 14

Cox v. Sears Roebuck & Co.,
   647 A.2d 454 (N.J. 1994).......................................................... 32

Dicuio v. Brother Int'l Corp.,
   2012 U.S. Dist. LEXIS 112047 (D.N.J. 2012)................................... passim

English v. Gen. Elec. Co.,
   496 U.S. 72 (2001) ................................................................ 24

Evancho v. Fisher,
   423 F.3d 347 (3d Cir. 2005)...................................................... 10

F.D.I.C v. Bathgate,
   27 F.3d 850 (3d Cir. 1994)....................................................... 32

Frannulovic v. Coca-Cola, Co.,
    2007 U.S. Dist. LEXIS 79732 (D.N.J. 2007)............................................ 35

Fellner v. Tri-Union Seafoods, LLC,
    539 F.3d 237 (3d Cir. 2003) .................................................................... 24

Furst v. Einstein Moomjy, Inc.,
    860 A.2d 435 (N.J. 2004) ........................................................................ 18

General Tel. Co. of Southwest v. Falcon,
    457 U.S. 147 (1982) ................................................................................. 12

Gratz v. Bollinger,
    539 U.S. 244 (2003) ................................................................................. 12

Greate Bay Hotel & Casino v. Tose,
    34 F.3d 1227 (3d Cir. 1994)..................................................................... 27

Haas v. Pittsburgh National Bank,
    526 F.2d 1083 (3d Cir. 1975).................................................................. 13

Hakimoglu v. Trump Taj Mahal Associates,
    1994 U.S. Dist. LEXIS 10953 (D.N.J. 1994)............................................ 27

Hammer v. Vital Pharmaceuticals, Inc.,
    2012 U.S. Dist. LEXIS 40632 (D.N.J. 2012)............................................ 18

Heisner v. Genzyme Corp.,
    No. 08-C-593, 2008 U.S. Dist. LEXIS 60569, 2008 WL 2940811
    (N.D.Ill., July 25, 2008) ......................................................................... 39

Hillsborough County, Fla. v. Automated Med. Labs., Inc.,
    471 U.S. 707 (1985) ................................................................................. 24

Holk v. Snapple Beverage Corporation,
    575 F.3d 329 (3d. Cir. 2009)............................................................. 23, 24

Hostetter v. Idlewild Bon Voyage Liquor Corp.,
    377 U.S. 324, (1964) ................................................................................ 22

In re Conagra Foods, Inc.,
   2012 WL 5995454 (C.D. Cal. Nov. 15, 2012)......................................... 37

In re Ford Motor Co. E-350 Van,
   2008 U.S. Dist. LEXIS 73690, 2008 WL 4126264 ................................. 38

In re Franklin Mut. Funds. Litig.,
   388 F. Supp.2d 451 (D.N.J. 2005) ........................................................... 12

In re Methyl Tertiary Butyl Ether (MTBE),
   2007 WL 700819 (S.D.N.Y. Mar. 7, 2007) ............................................. 26

Kleinman v. Merck & Co., Inc.,
   8 A.3d 851 (N.J. Super. Law. Div. 2009) ................................................ 16

Kuzian v. Elextrolux Home Products, Inc.,
   2013 U.S. Dist. LEXIS 44050 (D.N.J. 2013)................................ 10, 15, 32

Lee v. Carter-Reed, L.L.C.,
   4 A.3d 561 (N.J. 2010) .............................................................................. 18, 32

Lemelledo v. Beneficial Mgmt. Corp. of Am.,
   696 A.2d 546 (N.J. 1997) .......................................................................... 29

Lomonaco v. Sands Hotel,
   614 A.2d 634 (N.J. Super. Law Div. 1992) ............................................. 29

Lopez v. Nissan N. Am., Inc.,
   201 Cal.App.4th 572 (2011)...................................................................... 6

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) .................................................................................. 11

Mango v. Pierce-Coombs,
   851 A.2d 62 (N.J. Super. App. Div. 2004)................................................ 33

Mason v. Coca-Cola Co.,
   2010 U.S. Dist. LEXIS 65107 (D.N.J. 2010)................................ 24, 27, 35

MCI Telecommunications v. American Telephone & Telegraph, Inc.,
   496 F.2d 214 (3d Cir. 1974)...................................................................... 27

Miller v. American Family Publishers,
663 A.2d 643 (N.J. Super. Ch. 1995) ........................................................ 16

New Jersey Citizen Action v. Schering-Plough Corp.,
842 A.2d 174 (N.J. Super. App. Div. 2003) ............................................. 33

Parker v. Howmedica Osteonics Corp.,
Civ. No. 07-2400, 2008 U.S. Dist. LEXIS 2570, 2008 WL 141628 (D.N.J.
Jan. 14, 2008) .............................................................................................. 39

Phillips v. Cnty. of Allegheny,
515 F.3d 224 (3d Cir. 2008) ...................................................................... 10

Polaris Industries, Inc. v. McDonald,
119 S.W.3d 331 (Tex.App.2003) ......................................................... 37, 38

Rubin v. Coors Brewing Co.,
514 U.S. 476 (1995) ................................................................................... 23

Sheeran v. Progressive Life Ins. Co.,
440 A.2d 469 (N.J. Super. App.Div. 1981) ............................................... 27

Simmons v. Stryker Corp.,
Civ. No. 08-3451, 2008 U.S. Dist. LEXIS 93306, 2008 WL 4936982
(D.N.J. Nov. 17, 2008) ............................................................................... 39

Smajlaj v. Campbell Soup Co.,
782 F. Supp.2d 84 (D.N.J. 2011) ........................................................ passim

Smerling v. Harrah's Entertainment, Inc.,
919 A.2d 168, 171-72 (N.J. Super. App. Div. 2006) .......................... 29, 30

Smith v. Merial Limited,
2011 WL 2119100 (D.N.J. May 26, 2011) ............................................... 38

Society Hill Towers Owners' Ass'n v. Rendell,
210 F.3d 168 (3d. Cir. 2000) ..................................................................... 12

Stewart v. Smart Balance, Inc.,
2012 U.S. Dist. LEXIS 138454 (D.N.J. 2012) .................................... passim

Taylor v. JVC Ams. Corp.,
　　Civ. No. 07-4059, 2008 U.S. Dist. LEXIS 43215, 2008 WL 2242451
　　(D .N.J. May 29, 2008) ............................................................................ 38

Thiedemann v. Mercedes-Benz, USA, LLC,
　　872 A.2d 783 (N.J. 2005) ............................................................ 15, 16, 18

Union Ink Co., Inc. v. AT&T Corp.,
　　801 A.2d 361 (N.J. Super. App. Div. 2002) .............................................. 15

United States v. Locke,
　　529 U.S. 89 (2000) .................................................................................... 23

William Jameson & Co. v. Morgenthau,
　　307 U.S. 171 (1939) .................................................................................. 22

## **Statutes**

15 U.S.C. § 2310(d)(1) ....................................................................................... 39

15 U.S.C. § 272(b)(2) ........................................................................................... 6

27 U.S.C. § 205(e) ................................................................................................ 4

27 U.S.C. §§ 201 *et seq* ...................................................................................... 3

N.J.S.A. §§ 56:8-2 and 56:8-4 ..................................................................... 32, 33

N.J.S.A. § 12:2-314(2)(f) ................................................................................... 37

N.J.S.A. § 12A:2-314(1), (2)(c) & (f) ............................................................... 36

N.J.S.A. § 51:1-61(d) ............................................................................................ 8

N.J.S.A. §§  12A:2-314(a) and 12A:2-314(2)(f) ............................................... 36

N.J.S.A. 5:12-1 *et seq* ....................................................................................... 28

N.J.S.A. 56:8-1 ................................................................................................... 31

41 N.J.R. 3095(a) ....................................................................................... passim

TEX. BUS. & COM.CODE § 2.314(b)(6) .................................................. 37

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................... 10

Fed. R. Civ. P. 9(b) ...................................................................... 32

Fed. R. Civ. P. 12(b)(6) ................................................................... 9

**Regulations**

27 C.F.R § 7.29(a)(1)...................................................................... 4

27 C.F.R § 7.71(b)(2)................................................................... 5, 6

27 C.F.R. § 7.71 ........................................................................ 26

N.J.A.C. 13:2-27.1(a)(4) ........................................................... 5, 20, 21

N.J.A.C. 13:47B-1.20 ............................................................... 8, 21

# I.    __INTRODUCTION__

Stripped to its essentials, this civil action is about corporate malfeasance, specifically a corporate policy to water down a beloved American consumer product – beer.  Defendant argues that no legal remedy exists under either federal or state law to redress this corporate misconduct. To the contrary, as set forth below, this conduct violates both federal and state law.

This putative class action challenges a sophisticated, widespread and systematic corporate scheme to squeeze millions of dollars out of the pockets of American consumers, one beer at a time, while depriving law-abiding competitors of a level playing field. Plaintiff Brian Wilson alleges that Anheuser-Busch Companies, LLC ("AB"), violates state and federal laws by using sophisticated equipment and process control technology to deliberately "water down" its malt beverages after production and as the last step  before bottling.  The result, AB admits, is that most of its products contain less alcohol than what is stated on the label.[1]

---

[1] Plaintiff does not specifically allege that AB produces malt beverages *below* the legal tolerance level, nor is such an allegation required.  Rather, AB's practice of deliberately manipulating its manufacturing processes to abuse the tolerances intended to accommodate normal variation in production is itself a violation of federal and state law.

AB's motion to dismiss is more remarkable for what it *does not* say than for what it does. While AB emphasizes the state and federal 0.3% tolerance band for alcohol content, it fails to mention that the TTB and NIST *specifically* prohibit the intentional manipulation of tolerances to perpetrate fraud.  AB also cites state laws governing the labeling of alcoholic beverages, but fails to mention that New Jersey has expressly adopted federal standards and regulations.  Next, AB notes that Plaintiff does not allege that he has conducted independent product testing, yet fails to acknowledge the Complaint's clear allegations that AB itself systematically, and with unparalleled precision and accuracy, tests all of its products and maintains meticulous records thereof – records which, it is alleged, will indisputably show AB's mislabeling.  Perhaps the most telling omission is AB's failure to contend that it provides, or even intends to provide, consumers with the actual ABV that it promises on its labels.

It is from this incomplete presentation that the actual law and facts emerge. *First,* this Court has subject matter jurisdiction over Plaintiff's claims, notwithstanding the state's regulatory power, because New Jersey law does cede exclusive jurisdiction to an agency as opposed to the Courts. *Second,* the doctrine of primary jurisdiction is inapplicable, as nothing in New Jersey's Alcohol Beverage Control Act ("ABC") dictates that this

Court is stripped of subject matter jurisdiction by virtue of the type of claim alleged herein.  Further, federal agencies have already ruled on the issues raised by this case. *Third,* AB cannot treat the 0.3% tolerance as a get-out-of-jail-free card. Federal regulations and rulings, along with the state of New Jersey, have unequivocally held that tolerance regulations do not provide a safe harbor for deliberately unfair, unlawful, misleading or fraudulent conduct.  *Accordingly,* AB's deliberate conduct provides the basis for Plaintiff's consumer law and implied warranty claims.

For these reasons, and as more fully discussed below, Plaintiff respectfully requests that this Court deny AB's motion to dismiss.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Federal Regulatory Framework and New Jersey's Adoption Thereof

Enacted in 1935, the Federal Alcohol Administration Act ("FAAA"), 27 U.S.C. §§ 201 *et seq.,* requires, among other things,  that alcohol "labeling and advertising provide adequate information to the consumer concerning the identity and quality of the product" to "prevent misleading labeling or advertising that may result in consumer deception regarding the

product."[2]  27 U.S.C. § 205(e) prohibits the labeling of malt beverages with deceptive, false or misleading statements.[3]

Likewise, 27 C.F.R § 7.29(a)(1)  prohibits the labeling of beer beverages which contain "any statement that is false or untrue in any particular, or that, irrespective of falsity, directly or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression."

Under this provision, a brewer such as AB need not make any representations whatsoever about the alcoholic content of its products. However, if the brewer chooses voluntarily to make any such representations, they must be accurate, not false, untrue or misleading. Accordingly, since AB voluntarily labels its products with their various (supposed) ABVs, the labels must be accurate, not false, untrue or misleading "in any particular".

27 C.F.R § 7.71(b)(2) provides: "For malt beverages containing 0.5 percent or more alcohol by volume, statements of alcoholic content shall be

---

[2] Alcohol and Tobacco Tax and Trade Bureau website, http://www.ttb.gov/trade_practices/federal_admin_act.shtml
[3] Subsection (2) of 27 U.S.C. § 205(e) was held unconstitutional in *Rubin v. Coors Brewing Co*., 514 U.S. 476 (1995), on the grounds that the prohibition of statements of alcoholic content violated First Amendment speech rights. However, the remainder of the section (e) is broadly aimed at providing accurate information and curtailing consumer deception.

expressed to the nearest one-tenth of a percent, subject to the tolerance permitted by paragraph (c)(1) and (2) of this section." The regulations further state: "For malt beverages containing 0.5 percent or more alcohol by volume, a tolerance of 0.3 percent will be permitted, either above or below the stated percentage of alcohol." *Id.* at § 7.71(c)(1).

As described below, "tolerance" is a manufacturing term of art, specifically defined by the National Institute of Standards and Technology ("NIST") and adopted by the State of New Jersey. *See* N.J.S.A. § 51:1-61 and 41 N.J.R. 3095(a). The New Jersey Administrative Code governing the sale of alcoholic beverages also addresses labeling. Specifically, N.J.A.C. 13:2-27.1 adopts 27 C.F.R. part 7 encompassing section 7.71(b)(2) and all of the other federal labeling provisions for malt beverages, including beer. *See* N.J.A.C. 13:2-27.1(a)(4).

## B. The Intent and Permitted Use of Tolerances as Stated by the TTB and NIST

The Alcohol and Tobacco Tax and Trade Bureau ("TTB"), formerly known as the Bureau of Alcohol Tobacco and Firearms, is the federal agency responsible for implementing the FAAA, under the Department of Treasury. The TTB has clarified the proper intent and permitted use of tolerances. "The intent of these tolerances is to provide for normal production and analytical variables while continuing to ensure that the

labeling does not mislead the consumer." TTB Procedure 2004-1.  Here, Plaintiff alleges that AB's overstatements of alcohol content are not due to any "production and analytical variables" but are instead the result of intentional decisions to add water to dilute the finished product to an ABV level significantly below the labeled level, thus saving costs, while deceiving customers.

The NIST is "the agency within the United States Department of Commerce directed by Congress to develop national standards of measurement. (15 U.S.C. § 272(b)(2))." *Lopez v. Nissan N. Am., Inc.*, 201 Cal.App.4th 572, 578 (2011).  Like the TTB, the NIST also prohibits the deliberate manipulation of production facilities to take improper advantage of tolerances. The NIST has issued Handbook 44, entitled "Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices". The stated purpose of Handbook 44 is ". . .to eliminate from use, weights and measures and weighing and measuring devices . . . ***that facilitate the perpetration of fraud***, without prejudice to apparatus that conforms as closely as practicable to the official standards."[4] Section 2.3 of Handbook 44 states as follows:

[4] NIST Handbook 44, p. 1 (emphasis added).  *See also* 41 N.J.R. 3095(a) for a discussion of Handbook 44.

> ***Equipment owners should not take advantage of***
> ***tolerances by deliberately adjusting their equipment to***
> ***have a value, or to give performance, at or close to the***
> ***tolerance limit. Nor should the repair or service***
> ***personnel bring equipment merely within tolerance***
> ***range when it is possible to adjust closer to zero error***.[5]

Furthermore, the Handbook's User Guide states, "Whenever equipment is
adjusted, the adjustments shall be so made as to bring performance errors as
close ***as practicable to zero value***."[6]

The Treasury Department's rules and regulations provide in pertinent
part,

> In [§ 7.71(b)(1),](#) ATF is requiring alcoholic content to be
> labeled as percent alcohol by volume in order to be
> consistent with §§ 4.36 and 5.37 which require alcoholic
> content to be expressed in percent alcohol by volume on
> wine and distilled spirits labels. ***ATF believes it will be***
> ***easier for consumers to compare the alcoholic content***
> ***of a malt beverage with the alcoholic content*** of wines
> and distilled spirits, as well as with other malt beverages,
> if all statements of alcoholic content use the same units
> of measurement. ATF is not providing for a range of
> alcoholic content to be used in the labeling of malt
> beverages (such as "contains not more than 5.0% alcohol
> by volume"). ***ATF believes that labeling with a range***
> ***would not provide as much accuracy and would be less***
> ***useful to consumers than an actual statement of***
> ***alcoholic content.***

58 FR 21228-01 (emphasis added). They further provide that the tolerance
specified in 7.71(c) "permits normal variations in the production of beer, ale,

---

[5] Id. at § 2.3, p. A-4 (emphasis added).
[6] Id. at § G-UR.4.3, p. 1-11.

and so forth brought about by differences in raw materials and brewing practices." *Id.*

Under New Jersey law, producers like AB must adhere to NIST tolerance standards and are prohibited from engaging in deliberate manipulation of their equipment in order to set a value at or close to the tolerance limit when it is possible to target the stated content with great precision. N.J.S.A. §51:1-61 and 41 N.J.R. 3095(a) expressly incorporates NIST standards, including Handbook 44, and permits the New Jersey State Superintendent of Weights and Measures to adopt by reference rules and regulations adopted by the United States government, including specifications, tolerances, and technical requirements for weights and measures. N.J.S.A. § 51:1-61(d). *See also* N.J.A.C. 13:47B-1.20.

By deliberately targeting the very bottom of the stated tolerance, while labeling its products at the highest limit, these tolerances are therefore ***not*** being used as permitted and intended by the FAAA and TTB, and as articulated by the NIST Manual, which has the force of New Jersey law. The intent of tolerances is to "provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the customer." TTB Procedure 2004-1. The practice of using tolerance levels to consistently, repeatedly, and intentionally create a product at the bottom of

the tolerance is unfair, fraudulent and unlawful and inconsistent with proper

production practices.[7]

On February 25, 2013, Plaintiff Brian Wilson commenced this action

on behalf of himself and all other similarly situated to seek redress for the

AB's conduct in watering down its beer.  Thereafter, the parties entered into

a stipulation agreeing to allow AB to file the present Motion to Dismiss on

or before April 5, 2013.  The present Motion was then timely filed and by

Order dated April 10, 2013 this Court set the return date for the Motion as

June 3, 2013, with Plaintiff's response in opposition to the Motion to be

filed on or before May 3, 2013.  Accordingly, Plaintiff's present opposition

to the Motion to Dismiss is timely.

## III.  <u>STANDARD OF REVIEW</u>

When considering a motion to dismiss a complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded

allegations in the complaint as true and view them in the light most

---

[7]*See e.g*. Taguchi, G. <u>Taguchi on Robust Technology Development</u>(ASME
Press 1992), (Quality is "Uniformity around a target value."); Edgar Dietrich
and Alfred Schulze, <u>Statistical Procedures for Machine and Process
Qualification</u> – (ASQ Quality Press, 1999), p. 3-4 ("All those taking part in a
process must, however, using technically feasible and economically justifiable
measures, make an effort to produce a product with the least possible variation,
about the desired target value." "This target value is a value dependent on the
function of the product, which corresponds to the optimum expectation of the
customer).

favorable to the plaintiff. *Evancho v. Fisher,* 423 F.3d 347, 351 (3d Cir.

2005). It is well settled that a pleading is sufficient if it contains a "short and

plain statement of the claim showing that the pleader is entitled to relief."

*Kuzian v. Elextrolux Home Products, Inc.,* 2013 U.S. Dist. LEXIS 44050

(D.N.J. 2013)(citing Fed. R. Civ. P. 8(a)(2)). A district court, in weighing a

motion to dismiss, asks not "whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claim." *Bell*

*Atlantic v. Twombly,* 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 167 L.Ed. 2d

929 (2007). In *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir.

2008), the court stated "the Supreme Court's Twombly formulation of the

pleading standard can be summed up thus: 'stating… a claim requires a

complaint with enough factual matter (taken as true) to suggest' the required

element. This 'does not impose a probability requirement at the pleading

stage,' but instead 'simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element."

Furthermore, insofar as AB attacks Plaintiff's standing, "general factual

allegations of injury . . . may suffice to demonstrate standing, for on a

motion to dismiss, '[the Court] presume[s] that general allegations embrace

those specific facts that are necessary to support the claim.'" *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because Plaintiff's Complaint, viewed in the light most favorable to Plaintiff, and the following demonstrates, Plaintiff has met these standards. Accordingly, AB's Motion to Dismiss should be denied.

## IV.  ARGUMENT

AB asserts five equally implausible demurrers which, apart from the fact that they are unsupported by existing New Jersey and federal law, would effectively result in immunity for AB's malfeasance, permitting it to flaunt all regulations relating to the labeling of it products.

### A.  Plaintiff Has Standing to Sue

AB raises two standing arguments, one based on Plaintiff's claim for products he did not purchase and one based on the failure to indentify an injury in fact regarding the product Plaintiff did purchase.

The requirements of Article III constitutional standing are:

> (1) The plaintiff must have suffered an injury in fact- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of- the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Society Hill Towers Owners' Ass'n v. Rendell,* 210 F.3d 168, 175-76 (3d. Cir. 2000).

### 1. Plaintiff has standing to sue for claims for all products

In the class action context, traditional notions of standing are not completely informative of what claims may be asserted. *In re Franklin Mut. Funds. Litig.,* 388 F. Supp.2d 451, 461-462 (D.N.J. 2005). While some courts in this District have dismissed claims in putative class actions where plaintiffs only allege injury as to one product in a series of products by the same defendant, the United States Supreme Court has noted that "there is an inherent tension" regarding this issue. *See Stewart v. Smart Balance, Inc.,* 2012 U.S. Dist. LEXIS 138454 at *45 (D.N.J. 2012) (*citing Gratz v. Bollinger,* 539 U.S. 244, 263 n.15 (2003)).

In *Baby Neal for and by Kanter v. Casey,* the Third Circuit held that "where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48 (3d Cir. 1994)(*citing General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 149 (1982). Further, in *Haas v. Pittsburgh National Bank,* the Third Circuit held that notwithstanding the fact that a plaintiff lacked standing to pursue a

particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant. *See Stewart at \*47 (referencing Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975)). In *Haas*, the Court looked to the relatedness of the defendant's conduct, the closely related nature of the products at issue, and similar damages the plaintiff sought to recover, and came to the conclusion above, that plaintiff could assert her claims in putative class although she lack standing to pursue a particular claim. *Id.*

Recently, in *Stewart,* the District of New Jersey was presented with this issue. In *Stewart,* plaintiffs asserted claims for products that plaintiffs did and did not purchase. Defendant challenged the standing as to the non-purchased products. The Court found standing to pursue class claims existed because the claims for the products which plaintiffs had purchased had the same basis as for those that the plaintiff had not purchased. *Stewart* at \*48. Further, the Court stated that "dismissal is inappropriate at this stage of the litigation because whether [plaintiffs] may represent a class of plaintiffs who do have standing [for the products not purchased by plaintiffs] is not before the Court." *Id.*

Similarly, *Kuzian v. Electrolux Home Products, Inc.,* held that, at the motion to dismiss stage, the issue regarding whether plaintiffs have standing

to represent a class for products not purchased was not yet ripe. *Kuzian v. Electrolux Home Products, Inc.,* 2013 U.S. Dist. 44050, *17 (D.N.J. 2013). The Court went on to reference instruction from the Supreme Court on this issue, "class certification issues are 'logically antecedent to the existence of Article III issues,' and it is appropriate to reach the class action issues first, since the standing issues would not exist but for the class action certification." *Kuzian* at *17 (*citing Amchem Prods. v. Windsor,* 521 U.S. 91 (1997); *see also Clark v. Prudential Ins. Co. of America.,* 2013 U.S. Dist. LEXIS 15571 (D.N.J. 2013).

In the present case, Plaintiff purchased only one of the 11 products alleged to have been intentional diluted by AB. However, Plaintiff's claims regarding the product he did purchase are identical to the claims related to the items that were not purchased. The crux of the lawsuit is the "practice" of AB to intentionally mislabel its beers by calibrating its alcohol measuring devices to provide less alcohol than stated in its labels. This "practice" does not differ from product to product, but is a "practice" that, Plaintiff alleges, is applied across the board to all products listed. (Complaint, ¶¶ 8-9, 13-16). Further, all products listed are similar and have similar characteristics- in that they are all beers manufacturer by AB, which are intentionally mislabeled by overstating the actual amount of alcohol contained therein.

There is only one defendant, AB. Additionally, the basis for the damages

Plaintiff seeks to recover would be identical for both the purchased and non-

purchased products. In accordance with long standing case law discussed

*supra*, the motion to dismiss on this ground should be denied; class

certification is the appropriate time to address these issues. *See supra*

*Stewart, Kuzian and Clark.*

### 2. Plaintiff has standing to sue as he has suffered an injury in fact

AB argues that the complaint does not sufficiently describe an

ascertainable loss or other injury suffered by Plaintiff as a result of the

mislabeling alleged in the complaint.

There is neither a statutory definition for "ascertainable loss" nor

relevant legislative history. *Stewart* at *28 (*citing Thiedemann v. Mercedes-*

*Benz, USA, LLC,* 872 A.2d 783 (N.J. 2005)). "An ascertainable loss occurs

when a consumer receives less than what was promised." *Smajlaj v.*

*Campbell Soup Co.,* 782 F. Supp.2d 84, 99 (D.N.J. 2011)(*citing Union Ink*

*Co., Inc. v. AT&T Corp.,* 801 A.2d 361 (N.J. Super. Ct. App. Div. 2002). A

plaintiff need prove only that he has purchased an item partially as a result

of an unfair or deceptive practice or act and that the item is different from

that for which he bargained. *Smajlaj* at 99(*citing Miller v. American Family*

*Publishers,* 663 A.2d 643, 655 (N.J. Super. Ch. 1995). "The precise amount

of damages need not be known as long as the damages are measurable."

*Dicuio v. Brother Int'l Corp.,* 2012 U.S. Dist. LEXIS 112047 (D.N.J.

2012)(*citing Kleinman v. Merck & Co., Inc.,* 8 A.3d 851 (N.J. Super. Law.

Div. 2009)).  In cases involving misrepresentation, courts have found that

"either out-of-pocket loss or a demonstration of loss in value will suffice to

meet the ascertainable loss hurdle."  *Stewart* at *28 (*citing Thiedemann v.*

*Mercedes-Benz, USA, LLC,* 872 A.2d 783 (N.J. 2005)).

### a.    <u>Benefit-of-the-Bargain</u>

The New Jersey Supreme Court has found ascertainable loss premised

on a benefit-of-the-bargain theory sufficient to establish a *prima facie* case.

*Id.*  A benefit-of-the-bargain theory requires nothing more than that the

consumer was misled into buying a product that was ultimately worth less to

the consumer than the product he was promised.  *Smajlaj* at 99.  There is no

requirement that the product actually received be defective in any way other

than that it is not what was promised.  *Id.*  A plaintiff alleging a benefit-of-

the-bargain states a claim if he or she alleges (1) a reasonable belief about

the product induced by a misrepresentation; and (2) that the difference in

value between the product promised and the one received can be reasonably quantified. *Id.*[8]

In *Smajlaj,* the plaintiffs alleged that defendants mislabeled a soup product indicating that it contained 'less sodium' then the regular soup products, when in fact the sodium levels were the same. The 'less-sodium' soup cost more than the regular soup, and plaintiffs, relying on defendants' representations regarding the 'less-sodium', spent the extra money on the 'less-sodium soup.' Plaintiffs brought a claim under the CFA. The Court concluded that Plaintiffs sufficiently alleged an ascertainable loss under the CFA.

In the present case, as stated in Plaintiff's Complaint, Plaintiff purchased malt beverages manufactured by AB that had less ABV than represented. As such, the malt beverages were not as promised and he has suffered legally cognizable damages proximately caused by AB's misconduct. *Id.* at 99; Plaintiff's Complaint at ¶6.

---

[8] At this stage, it is sufficient to plead that there is a calculated difference in the price of AB's products based upon the amount of alcohol in the beverage. Thus, Plaintiff believes that the evidence which will be adduced in discovery will reasonably quantify the difference in value between the product promised to Plaintiff and one actually received. Stated another way, the evidence will show that AB charges a premium for products with a higher ABV.

### b.    <u>Out-of-Pocket Loss</u>

Contrary to AB's statement that out of pocket losses are not recoverable in misrepresentation cases under New Jersey Law, "[i]n cases involving misrepresentation, Courts have found that 'either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle.'" *Stewart* at \*28 (*citing Thiedemann v. Mercedes-Benz, USA, LLC,* 872 A.2d 783 (N.J. 2005)). The out of pocket rule applies when a plaintiff can demonstrate that he paid money, and is now out of pocket. *Dicuio v. Brother Int'l Corp.,* 2012 U.S. Dist. LEXIS 112047 (D.N.J. 2012); *see also Furst v. Einstein Moomjy, Inc.* 860 A.2d 435 (N.J. 2004). The New Jersey Supreme Court explained that the purchase price of the product constitutes an out-of-pocket loss. *Dicuio* at \* 23 (*citing Lee v. Carter-Reed, L.L.C.,* 4 A.3d 561 (N.J. 2010)). In *Hammer v. Vital Pharmaceuticals, Inc.,* 2012 U.S. Dist. LEXIS 40632 (D.N.J. 2012), the Court concluded that a purchaser of a dietary supplement mislead by the seller's statement that the supplement had been "certified by science" sufficiently pled ascertainable loss under the NJCFA by asserting that he paid the purchase price for the product and that he "would not have purchased" the product but for the Defendant's allegedly false statement. Further, in *Dicuio*, the Court concluded that plaintiffs sufficiently pled out of pocket losses under the

NJCFA by asserting that they expended funds to purchase additional products to replace the misrepresented, previously purchased products. *Dicuio* at 24.

In the present case, Plaintiff has sufficiently pled an out of pocket loss under the CFA. Specifically, Plaintiff alleged that he paid the purchase price for the Michelob Ultra and he would not have purchased it but for AB's false statements on the label regarding alcohol content. These allegations are almost identical to the allegations made in *Hammer*, in which the Court found that there were sufficient allegations to establish an ascertainable loss.

**B. Tolerance Regulations Do Not Provide a Safe Harbor for Deliberately Unfair, Unlawful, Misleading or Fraudulent Conduct**

This case is not about whether brewers must produce all malt beverages to exactly the ABV on the label. Similarly, it is not about whether state or federal law recognizes a tolerance. This case turns on whether a tolerance may be used as a safe harbor – a get-out-of-jail-free card – against deliberately unfair, unlawful, misleading or fraudulent conduct. In other words, the central question is whether AB is legally permitted to intentionally mislabel its products by overstating the alcohol content to the limit of the tolerance band rather than to give consumers what it promises on the labels. As the Complaint alleges: "There are no impediments -

economic, practical or legal- to AB accurately labeling its products to reflect their true alcohol content.  Nevertheless, AB uniformly misrepresents and overstates that content."  (Complaint, ¶8.)

AB acknowledges the application of 27 C.F.R. §7.71(c)(1), the federal standard for statements of alcohol content on malt beverages (AB Brief at 11).  And while AB claims that New Jersey has its own regulations, New Jersey has adopted the .3% federal tolerance standard.  *See* N.J.A.C. 13:2-27.1(a)(4).

AB's facile characterization of the .3% tolerance of the federal and state provisions as an automatic "get out of jail free card" is misplaced. Both the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), and the National Institute for Standards and Technology ("NIST") prohibit the deliberate manipulation of tolerances in order to perpetuate fraud.  Rather, "[t]he intent of these tolerances is to provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the consumer."  *See* TTB Procedure 2004-1; 58 FR 21228-01; and TTB Ruling 80-3.

Producers like AB must adhere to NIST tolerance standards as a matter of law in New Jersey, and are prohibited from engaging in deliberate manipulation of their equipment in order to set a value at or close to the

tolerance limit when it is possible to target the stated content with great precision. *See e.g.* N.J.S.A. §51:1-61; 41 N.J.R. 3095(a); N.J.A.C. 13:2:27.1(a)(4); N.J.A.C. 13:47B-1.20..  As such, whether AB deliberately manipulates its production processes and equipment to take advantage of the 0.3% tolerance standard, and whether doing so amounts to prohibited abuse of that standard, are factual and legal questions which prohibit the dismissal of this case at this early stage.

### C.     AB's Exclusive Jurisdiction Claim Defies Law and Common Sense

It is no secret why AB asks this Court to ignore the TTB, which has stated that a brewer may not intentionally manipulate tolerances to perpetuate fraud, and find that New Jersey's ABC, which has not spoken on this issue, has the exclusive authority over these claims.  However, New Jersey law follows the applicability of the federal agencies' regulations regarding statements of alcohol content on malt beverages.  *See e.g.* N.J.A.C. 13:2-27.1(a)(4); N.J.S.A. §51:1-61 and 41 N.J.R. 3095(a) (expressly incorporating NIST standards, including Handbook 44, and permitting the New Jersey State Superintendent of Weights and Measures to adopt by reference rules and regulations adopted by the United States government).  *See also* N.J.A.C. 13:47B-1.20.

In order to reach the conclusion that the New Jersey ABC is the "exclusive" governing authority over the labeling of malt beverages in the State of New Jersey, this Court would be required to find that the Federal Alcohol Administrative Act violates the Dormant Commerce Clause. The Supreme Court has consistently rejected this argument.

> Here, the Federal Alcohol Administration Act was attacked upon the ground that the Twenty-first Amendment to the Federal Constitution, U.S.C.A., gives to the States complete and exclusive control over commerce in intoxicating liquors, unlimited by the commerce clause, and hence that Congress has no longer authority to control the importation of these commodities into the United States. We see no substance in this contention.[9]

*William Jameson & Co. v. Morgenthau*, 307 U.S. 171, (1939). *See also Arrow Distilleries v. Alexander*, 109 F.2d 397, 400-01 (7th Cir. 1940). "We are of the opinion that the enactment of the Federal Alcohol Administration Act was a valid exercise by Congress of its constitutional powers to regulate interstate and foreign commerce and to protect the revenue; also we are of the opinion that the Act contains no unconstitutional delegation of legislative power."

---

[9] Justice Stewart later observed that "[b]oth the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, (1964).

Of course, the U.S. Supreme Court more recently overturned the prohibition of statements of alcohol content on malt beverage labels, giving rise to the very regulation that AB is attempting to hide behind. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481 (1995). If this Court were to find the FAAA unconstitutional, there would be no applicable tolerance standard since New Jersey incorporated by reference the federal regulation.

### D.     Preemption Is Inapplicable To The Instant Case

AB attempts to dress its primary jurisdiction argument as a preemption argument, arguing that that  the mere existence of the Alcohol Beverage Control Act means that all of Plaintiff's claims are preempted, either by implied field preemption or implied conflict preemption, (AB concedes that the ABC does not contain an express preemption provision). AB's argument is simply misplaced.

A state regulation can not preempt a state cause of action. Field preemption occurs when state attempts to regulate in a "field reserved for federal regulation."  *Holk v. Snapple Beverage Corporation,* 575 F.3d 329, 335 (3d. Cir. 2009)(*citing United States v. Locke,* 529 U.S. 89 (2000)).  AB is not arguing that federal law has fully occupied the field.  Instead, it argues that ABC, a **state** law, is the sole governing area of law.  The fallacy of this

argument is described in greater detail above, but the point here is that "field preemption" has nothing whatever to do with this case.

Similarly, implied conflict preemption is present when it is impossible for a private party to comply with both state and federal requirements. *Holk* at 339 (*citing English v. Gen. Elec. Co.,* 496 U.S. 72, 78-79 (2001). AB argues that Plaintiff's claims directly conflict with the legislative scheme and would frustrate the purpose of the ABC Act- not a federal regulation, but a state regulation. Therefore, implied conflict preemption is not applicable. As the Third Circuit stated in *Fellner v. Tri-Union Seafoods, LLC,* "it is federal law which preempts contrary state law; nothing short of federal law can have that effect." *Fellner v. Tri-Union Seafoods, LLC,* 539 F.3d 237, 243 (3d Cir. 2003). Additionally, the Supreme Court had stated there is a "presumption against preemption." *Hillsborough County, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713 (1985). As a result, Plaintiff's claims should not be dismissed based on preemption of any kind.

In *Mason v. Coca-Cola Co.,* 2010 U.S. Dist. LEXIS 65107 (D.N.J. 2010), the plaintiff alleged that they were misled by defendant's use of the term "Plus" in the name and marketing of its product. *Id.* at *4-5. The Court determined that "this case calls for the determination of whether plaintiffs received what they bargained for." *Mason* at * 4. Similar to the

present case, the plaintiffs in *Mason* were not alleging anything that could be construed as seeking to impose greater or different labeling obligations upon defendant than the federal law, instead plaintiffs were alleging that defendant failed to abide by the federal labeling requirements and in doing so misled plaintiffs as a matter of state law. *Mason* at *8. The Court went on to state that even if defendants could ultimately demonstrate that it was compliant with the FDA regulation, such fact would ultimately serve as a **defense** to any claim stemming from its use of the term "Plus" rather than grounds for preemption. *Mason* at *10 (emphasis added). The Court reasoned that if it went on to permit the application of implied conflict preemption in the *Mason* case, "it would turn regulatory definitions into suits of armor capable of immunizing parties who mislead the public from any potential civil liability, even before it is determined whether the party complied with the definition. *Mason* at *10-11. Ultimately, the Court declined to dismiss plaintiffs' claims based on implied conflict preemption. *Mason* at * 13.

In the present case, AB argues that the ABC (a State law) "preempts" Plaintiff's claims (also State laws). Preemption is simply an inapplicable doctrine, as AB is not arguing that Plaintiff's claims are precluded by any federal law. AB's alleged compliance with a regulation is an affirmative

defense as opposed to a ground for preemption, as described by the *Mason* Court.

### E. The Primary Jurisdiction Doctrine is Inapplicable to the Present Dispute

AB claims that this Court should not hear this action and instead refer it to the New Jersey ABC Division. This argument is similarly without merit.

First, the doctrine is inapplicable where more than one agency exercises authority over the subject matter of a lawsuit. In *In re Methyl Tertiary Butyl Ether (MTBE)*, 2007 WL 700819 (S.D.N.Y. Mar. 7, 2007), the Court denied Defendants' motion to dismiss based on the primary jurisdiction doctrine, noting that ". . . it appears that there is no single agency to which this matter is particularly committed." *Id.* at *4. As stated above, New Jersey has expressly adopted the federal regulation for statements of alcohol content on malt beverages, 27 C.F.R. § 7.71. Thus, here, the TTB and state agencies share responsibility for alcohol regulation, and the primary jurisdiction doctrine should not apply where ". . . all parties appear to agree that no single agency is responsible for providing all of the relief [Plaintiff] seeks. Thus, while several agencies might be competent to address [Plaintiff's] MTBE problems, none has the sole authority to do so." *Id.*

Second, the doctrine of primary jurisdiction applies only where a claim involves technical or policy considerations which are beyond the court's ordinary competence and within an administrative agency's field of expertise and requires that they court refer the matter to the appropriate agency. *Mason* at * 2 (*citing MCI Telecommunications v. American Telephone & Telegraph, Inc.,* 496 F.2d 214 (3d Cir. 1974)). Whether primary jurisdiction applies is determined on a case by case basis in which courts consider the following factors:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Mason* at * 4.

In New Jersey, the courts consider legislative intent in determining whether the legislature has vested exclusive subject matter jurisdiction in an agency, such as the ABC. *Greate Bay Hotel & Casino v. Tose,* 34 F.3d 1227, 1232 (3d Cir. 1994). Absent an "explicit statutory grant of power," an administrative agency may not impliedly act as a "court of claims." *Sheeran v. Progressive Life Ins. Co.*, 440 A.2d 469 (N.J. Super. App.Div. 1981).

In *Hakimoglu v. Trump Taj Mahal Associates,* defendant argued that the district court did not have proper subject matter jurisdiction over plaintiffs' claims because of the exclusive jurisdiction and control over all aspects of casino gambling was allegedly vested in the Casino Control Commission, under the New Jersey Casino Control Act, N.J.S.A. 5:12-1 *et seq.  Hakimoglu v. Trump Taj Mahal Associates,* 1994 U.S. Dist. LEXIS 10953, * 2 (D.N.J. 1994).  As summarized by the Court, "defendants argue that this court lacks subject matter jurisdiction because it has been preempted by state's pervasive regulation of the casino industry, which vests exclusive jurisdiction over this matter in the Casino Control Commission." *Hakimoglu* at * 5.  Defendants went on to cite various separate sections of the Casino Control Act to reach their conclusion of "pervasive regulation" and that plaintiffs' claims fall within the jurisdiction of the Casino Control Commission. *Hakimoglu* at *6-7.  However, the Court points out "[g]laringly absent from this regulatory scheme is an provision precluding a casino from permitting an intoxicated patron to gamble." *Hakimoglu* at *7. Unfortunately, Defendants would have this court recognize a jurisdictional whole greater than the sum of the statutory parts. *Hakimoglu* at * 10.  The court went on to explain that "[i]t is a well settled principle that in the absence of a clear statement of intent, statutes in derogation of the common

law should be narrowly construed. *Hakimoglu* at * 9 (*citing Lomonaco v. Sands Hotel,* 614 A.2d 634 (N.J. Super. Law Div. 1992)). Ultimately, in *Hakimoglu,* the Court found that there was nothing in the Casino Control Act that purported to regulate, let alone preempt, a court of law from examining, at common law, the casino's conduct, and as a result denied defendant's motion to dismiss. *Hakimoglu* at *10.

Similar to *Hakimoglu,* in the present case there is no language within the ABC dictating that New Jersey's consumer protection laws may not be applied in their ordinary fashion just because the product in question contains alcohol. Nor has AB demonstrated that the factual issues raised by the complaint are so technical or complex that they are beyond the competence of a court to resolve. The primary jurisdiction doctrine has no applicability here.

### F. The ABC Act Does Not Divest This Court of Subject Matter Jurisdiction

The Legislature may vest an administrative agency with exclusive primary jurisdiction over common-law claims, but only if it does so expressly and by explicitly granting that agency the power to award damages in private matters. *Smerling v. Harrah's Entertainment, Inc.,* 919 A.2d 168, 171-72 (N.J. Super. App. Div. 2006)(*citing Campione v. Adamar of N.J.,* 714 A.2d 299 (N.J. 1998). New Jersey courts have addressed the interplay

of the Consumer Fraud Act with regulatory schemes of various administrative bodies. For example, in *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, a case involving loan packing, the Court held that the mere existence of an alternative regulatory scheme of the Department of Banking and Insurance did not automatically eliminate the applicability of the Consumer Fraud Act. *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546 (N.J. 1997). The Court noted that "in determining whether the existence of other regulations creates an exemption to the CFA for particular conduct that otherwise would fall within its provisions, it should ordinarily be assumed that the CFA applies to the covered practice. *Id.* at 552 - 53. The Court went on to articulate the test of preemption by stating "[w]e stress that the conflict must be patent and sharp, and must not simply constitute a mere possibility of incompatibility." *Id* at 554.

In *Smerling*, plaintiffs filed a lawsuit against Harrah's Entertainment, Inc., a casino, which included a claim under the Consumer Fraud Act based on deceptive and misleading promotional schemes. The defendants moved for dismissal based on lack of jurisdiction, or remand to the "CCC" pursuant to the Casino Control Act. The Court found that no conflict in the application of the CFA to the advertising activities and the Casino Control Act. *Smerling* at 175. The Court explained that the advertisements at issue

did not contain "any content which calls upon agency expertise or prerogative to which a court need defer. Rather, the ads in issue raise only ordinary questions whether they contain false, deceptive or misleading statements…" *Id.* at 175.

Similar to *Smerling*, and in accordance with *Lemelledo*, Plaintiff's CFA claim is properly before this Court and should not be remanded to ABC. The basis of Plaintiff's CFA claim is that the labeling on Defendant AB's products was false and misleading, specifically that the ABV percentages were being targeted lower thereby creating a watered down beer. The statements contained on the labels that are misleading are certainly within the purview of the CFA and it is not necessary for the Court to need to expertise of the ABC to determine whether the label contained misleading information. Further, there is no "patent and sharp" conflict between the ABC and the CFA regarding this issues presented in Plaintiff's claims and the legislature has not explicitly granted the ABC power "to award damages in private matters." *Smerling, supra*, at 187. Because this Court alone has the power to award damages to Plaintiff and the putative class, this argument should be rejected.

### G. Plaintiff States a Valid Claim Under the Consumer Fraud Act

The Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to 181, provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace. The CFA is intended to be broadly applied in order to accomplish it remedial purpose, and therefore is to be construed liberally in the consumer's favor. *Kuzian v. Electrolux Home Products, Inc.,* 2013 U.S. Dist. LEXIS 44050, *27 (D.N.J. 2013)(*citing Lee v. Carter-Reed Co.,* 4 A.3d 561 (N.J. 2010)). The CFA protects consumers from unfair practices "even when a merchant acts in good faith." *Smajlaj v. Campbell Soup Co.,* 782 F. Supp. 2d 84 (D.N.J. 2013)(*citing Cox v. Sears Roebuck & Co.,* 647 A.2d 454 (N.J. 1994). The elements of a CFA claim are: (1) an unlawful practice, (2) an ascertainable loss and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Id.*

AB argues that Plaintiff has failed to state a claim under the CFA based on the failure to plead unlawful conduct of AB and an ascertainable loss by Plaintiff. As set forth below, Plaintiff has sufficiently plead all the elements necessary for a valid CFA claim, including the heightened pleading requirements under Fed. R. Civ. P. 9(b). *See F.D.I.C v. Bathgate,* 27 F.3d 850, 876-877 (3d Cir. 1994).

### 1. Plaintiff has sufficiently pled "unlawful conduct" of AB

Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations promulgated under the Act. *See* N.J. Stat. Ann. §§ 56:8-2, 56:8-4. Unlawful conduct consists of the following: any person who uses: "any unconscionably commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intend that others rely upon such concealment, suppression or omission." *See* N.J. Stat. Ann. § 56:8-2; *see also Stewart v. Smart Balance, Inc.,* 2012 U.S. Dist. LEXIS 138454, * 26 (D.N.J. 2012). An affirmative representation is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Stewart* at *26 (*citing Mango v. Pierce-Coombs*851 A.2d 62 ( N.J. Super. App. Div. 2004)). Further, to rise to the level of consumer fraud, "the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Smajlaj,* 782 F. Supp.2d at 98 (*citing New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. Super. App. Div. 2003)).

AB argues that Plaintiff fails to state a claim because a variation of the 0.3% ABV or less is (purportedly) not material to the sales at issue and AB's

actions do not "stand outside the norm of reasonable business practices." Common sense suggests that the amount of alcohol content in a beer is certainly a material fact to the average consumer. The complaint alleges that the AB's beers contain "significantly lower" alcohol levels than promised on the labels. (Complaint, ¶8.) However, to the extent that AB seriously desires to contest that point, it is a factual issue not properly asserted in a motion to dismiss. As Plaintiff alleged in his Complaint, the amount of alcohol content was a factor to him in considering what beer to purchase.[10] Plaintiff then relied on AB's representations, on its label, regarding the alcohol content of the beer beverage. Therefore, as alleged in the Complaint, the significantly higher alcohol content  promised on the label was material to the sale at issue.

Further, Plaintiff alleges that "there are no impediments - economic, practical or legal- to AD accurately labeling its products to reflect their true alcohol content. Nevertheless, AB uniformly misrepresents and overstates that content." (Complaint, ¶8). This intentionally deceptive practice is certainly "outside the norm of reasonable business practices" in that AB is

---

[10] The U.S. Supreme Court has recognized the materiality of statements of alcohol content for certain consumers of beer. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 484, 115 S. Ct. 1585, 1590, 131 L. Ed. 2d 532 (1995).

intentionally giving Plaintiff and the putative class members less than what AB promises on the labels.

### 2. Plaintiff has sufficiently pled "an ascertainable loss" under the CFA

For all the reasons set forth in Section IV.A.2, *supra*, Plaintiff has established the ascertainable loss element under the CFA.

### 3. Plaintiff has sufficiently pled the element of causation

Allegations that plaintiff would not have purchased a product had it been accurately labeled or that they purchased the product because of the misleading claim sufficient to plead causation. *Mason v. Coca-Cola, Co.,* 2010 U.S. Dist. LEXIS 65107 (D.N.J. 2010)(*citing Frannulovic v. Coca-Cola, Co.,* 2007 U.S. Dist. LEXIS 79732 (D.N.J. 2007). In *Dicuio,* the Court found there were sufficient allegations establishing a causal nexus in plaintiffs stating that had they known of the product defects, they would not have purchased the products. *Dicuio* at 25. *See also Arcand v. Brother Itern. Corp.,* 2010 U.S. Dist. LEXIS 103942 (D.N.J. 2010).

In the present case, in accordance with *Dicuio* and *Arcand*, Plaintiff alleged that had he known of the product defects, he would not have purchased the products. It therefore follows, that Plaintiff has sufficiently pled the causation element of the CFA claim.

### H.   Plaintiff Has Sufficiently Pled Breach of Implied Warranty of Merchantability Claim

AB mischaracterizes Plaintiff's warranty claim.  Plaintiff, in his

Complaint, alleges:

> 40.   Plaintiff and class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with respect to the stated percentages of alcohol.  As also stated above, AB breached the implied warranty of merchantability accompanying such transactions because Plaintiff and class members did not receive goods that conformed to the promises or affirmations of fact on their containers or labels.  *See* N.J.S.A. §§ 12A:2-314(a) and 12A:2-314(2)(f).

*Id.* The factual background for this allegation is more fully set forth above in

Section II.  In addition, this allegation is taken directly from the New Jersey

Commercial Code, which provides in pertinent part:

> (1) [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

> (2) Goods to be merchantable must be at least such as . . .

> (f) conform to the promises or affirmations of fact made on the container or label if any.

N.J.S.A. § 12A:2-314(1), (2)(c) & (f).  Similarly, the Official Comment to

N.J.S.A. 12A:2314(2)(f) states:

> Paragraph (f) applies, on the other hand, wherever there is a label or container on which representations are made, even though the original contract, either by express terms

or usage of trade, may not have required either the labeling or the representation. This follows from the general obligation of good faith which requires that a buyer should not be placed in the position of reselling or using goods delivered under false representations appearing on the package or container. No problem of extra consideration arises in this connection since, under this Article, an obligation is imposed by the original contract not to deliver mislabeled articles, and the obligation is imposed where mercantile good faith so requires and without reference to the doctrine of consideration.

*Id.* at Official Comment No. 10.  Accordingly, where a seller makes representations on a label, even though the seller is not required to make said representations, the seller's general obligation of good faith requires that the label not be false or contain any misrepresentations.  *Id.*

In *In re Conagra Foods, Inc.*, 2012 WL 5995454 (C.D. Cal. Nov. 15, 2012), a case interpreting the New Jersey Commercial Code, specifically N.J.S.A. § 12:2-314(2)(f), plaintiffs alleged because "Wesson Oils" did not conform to the representation on its labels that the product was "100% natural," that the plaintiffs claims could not be dismissed.  As the Court held:

> **ConAgra also contends that plaintiffs' implied warranty claims are foreclosed under the law of New Jersey and Washington, because the plaintiffs do not contend that Wesson Oils do not conform to their ordinary and intended use. New Jersey's statute provides that, for goods to be merchantable, they must "conform to the promises or affirmations of fact**

> **made on the container or label if any.” N.J. STAT.
> ANN. 12A:2–314(2)(f).** Texas' statute uses the same
> language. TEX. BUS. & COM.CODE § 2.314(b)(6); see
> also *Polaris Industries, Inc. v. McDonald,* 119 S.W.3d
> 331, 336 (Tex.App.2003) (“[A] product is considered
> unmerchantable if it does not conform to the promises or
> affirmations of fact which are on the product's container
> or label”).
>
> **Plaintiffs have alleged that Wesson Oils do not
> conform to the representation on their labels that they
> are “100% Natural.” This allegation plainly falls
> within the ambit of the statutes, and plaintiffs' claims
> cannot be dismissed on this basis as a result.**

*Id.* at *14 (emphasis added) (footnotes omitted). Accordingly, at the motion

to dismiss stage, the fact that plaintiffs in *Conagra* alleged, as Plaintiff here,

that the product did not conform to the representation on the label was

sufficient to allow their claim for breach of implied warranty to go forward.

In the present case, Plaintiff has clearly made an allegation that AB's

product did not conform to the representation on the label and AB admits its

nonconformance. AB contends that federal and state law permits it to

deceive the public. This is nothing more than an affirmative defense and

cannot serve as a basis for dismissing Plaintiff's claim at this early stage. As

stated by this Court in *Smith v. Merial Limited*, 2011 WL 2119100 (D.N.J.

May 26, 2011):

> At the motion to dismiss stage, it is enough that Plaintiffs
> provide more than “bald assertions,” and identify specific
> affirmations by Defendant that could be found to

constitute an express warranty. *Compare In re Ford Motor Co. E–350 Van,* 2008 U.S. Dist. LEXIS 73690, at *14–15, 2008 WL 4126264 (finding that an allegation that Ford described a van as a "15–passenger" van survived a motion to dismiss, as such a statement could constitute an "objective representation warranting the van's design and safety"), *and Taylor v. JVC Ams. Corp.,* Civ. No. 07–4059, 2008 U.S. Dist. LEXIS 43215, at *15–16, 2008 WL 2242451 (D .N.J. May 29, 2008) (allegation that television was sold as a "1080p" television but did not accept a 1080p signal found sufficient to survive motion to dismiss), *with Simmons v. Stryker Corp.,* Civ. No. 08–3451, 2008 U.S. Dist. LEXIS 93306, at *5, 2008 WL 4936982 (D.N.J. Nov. 17, 2008) (dismissing a claim that was "devoid of any 'factual matter' to support the existence of an express warranty"), *and Parker v. Howmedica Osteonics Corp.,* Civ. No. 07–2400, 2008 U.S. Dist. LEXIS 2570, at *21, 2008 WL 141628 (D.N.J. Jan. 14, 2008) (general references to "press releases" and "assurances of safety," as opposed to specific statements, cannot survive a motion to dismiss), *and Heisner v. Genzyme Corp.,* No. 08–C–593, 2008 U.S. Dist. LEXIS 60569, at *24–25, 2008 WL 2940811 (N.D.Ill., July 25, 2008) (claim dismissed where plaintiff failed to specify any particular affirmation or promise by defendant).

*Id.* at *6. In the present case, Plaintiff has identified specific affirmations of fact by AB– namely the ABV of its products. Therefore, AB's motion to dismiss this count must be denied.

## I. Plaintiff Has Sufficiently Pled a Claim for Violation of the MMWA

The Magnuson-Moss Warranty Act ("MMWA") provides that a consumer who is damaged by the failure of the warrantor to comply with

any obligation under this chapter, or under an implied warranty may bring suit for damages and other legal equitable relief.  15 U.S.C. § 2310(d)(1). The MMWA creates a federal claim based on the breach of a state law warranty.  *Id.*  Since Plaintiff has sufficiently pled a breach of implied warranty of merchantability under New Jersey law, as more fully set forth above, Plaintiff has sufficiently stated a MMWA claim.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff Brian Wilson, individually and on behalf of all others similarly situated, respectfully requests that this Honorable Court deny the Motion to Dismiss of Defendant Anheuser-Busch Companies, LLC.

Respectfully submitted,

CAROSELLI BEACHLER MCTIERNAN
& CONBOY

BY: s/DAVID S. SENOFF
DAVID S. SENOFF, ESQUIRE
LAUREN C. FANTINI, ESQUIRE

1845 WALNUT STREET, FIFTEENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19102
T: (215) 609-1350/F: (215) 609-1351
DSENOFF@CBMCLAW.COM
LFANTINI@CBMCLAW.COM

ATTORNEYS FOR PLAINTIFFS
BRIAN WILSON
Date: May 3, 2013                AND THE PROPOSED CLASS

## <u>CERTIFICATION OF SERVICE</u>

I, David S. Senoff, Esquire, do hereby certify that a true and correct copy of Plaintiff's Response to Defendant's Motion to Dismiss was filed electronically on May 3, 2013, and is available for viewing and downloading from the ECF system.

CAROSELLI BEACHLER MCTIERNAN
& CONBOY

BY: s/DAVID S. SENOFF
DAVID S. SENOFF, ESQUIRE
LAUREN C. FANTINI, ESQUIRE

1845 WALNUT STREET, FIFTEENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19102
T: (215) 609-1350/F: (215) 609-1351
DSENOFF@CBMCLAW.COM
LFANTINI@CBMCLAW.COM

ATTORNEYS FOR PLAINTIFFS
BRIAN WILSON
AND THE PROPOSED CLASS